**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 12-cv-00776-REB-MJW

MENTOR WORLDWIDE LLC,

      Plaintiff,

v.

KRISTINE CRAIGO,

      Defendant.

---

## TEMPORARY RESTRAINING ORDER

**Blackburn, J.**

      This matter is before me on the **Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction** [#5][1] filed March 28, 2012.  The defendant filed a response [#18], and the plaintiff filed a reply [#20].  In addition, the plaintiff filed a notice of errata [#16], and the defendant filed an additional exhibit [#21], which exhibit was omitted inadvertently from her response.  On April 5, 2012, I conducted a hearing on the motion for temporary restraining order and heard argument from both the plaintiff and the defendant.  At the hearing, the parties did not submit evidence in addition to the evidence submitted with the motion, response, and reply.

## I.  JURISDICTION

      I have jurisdiction over this case under 28 U.S.C. § 1332 (diversity).

---

[1]   "[#5]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## II.  STANDARD OF REVIEW

A temporary restraining order or preliminary injunction is extraordinary relief.  A party seeking a temporary restraining order or preliminary injunction must show: (1) that the movant has a substantial likelihood of eventual success on the merits; (2) that the movant will suffer imminent and irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest.  ***Lundgrin v. Claytor***, 619 F.2d 61, 63 (10th Cir. 1980); ***Heideman v. S. Salt Lake City***, 348 F.3d 1182, 1189 (10th Cir. 2003) (irreparable injury must be imminent).  In addition, a party seeking a temporary restraining order also must demonstrate clearly, with specific factual allegations, that immediate and irreparable injury will result absent a temporary restraining order.  FED. R. CIV. P. 65(b).  On balance, the record in this case demonstrates that these factors weigh in favor of injunctive relief, initially in the form of a temporary restraining order.

## III.  BACKGROUND

The defendant, Kristine Craigo, was an employee of the plaintiff, Mentor Worldwide LLC for about 21 years.  Ms. Craigo was a plastic surgery sales representative working in Mentor's rocky mountain region.  On March 9, 2012, the Food and Drug Administration approved Sientra Inc. to sell its silicone gel breast implants. The approval made Mentor and Sientra direct competitors in the silicone gel breast implant business.  On March 12, 2012, Ms. Craigo resigned her employment with Mentor and immediately went to work for Sientra.

Ms. Craigo executed at least three employee confidentiality agreements with Mentor.  Copies of the agreements are attached to the affidavit of John Wyatt, which is

included with Mentor's motion.  Paragraph three of the agreement dated February 9, 2002, is titled "Nondisclosure of Proprietary Information."  That paragraph provides:

> Unless authorized in writing by an Officer or the Legal Counsel of the Company, I will not divulge or use any of the proprietary Information for my own or another's benefit, either during my employment or afterwards, nor will I accept any employment which would, by the nature of the position, inherently involve the use or disclosure by me of Proprietary Information.

*Motion* [#5], Exhibit A-1 [#5-1] (Affidavit of John Wyatt), Exhibit A to Affidavit [#5-2], CM/ECF p. 4.   Paragraph 5 of the agreement, titled "Competitive Employment," provides, in subsection (b) of the paragraph:

> For 360 days after termination of my employment with the Company, I will not attempt to divert any business by soliciting contacting, or communication with any persons listed on any of the Company's customer lists who have been customers of the Company's products at any time within the twelve (12) months immediately preceding the termination of my employment with the Company.

*Id.*, CM/ECF p. 5.

Four days before her resignation from Mentor, Ms. Craigo e-mailed a copy of her Mentor customer list to her husband.  Apparently, this was a list of Ms. Crago's contacts as maintained in her copy of the computer program Outlook. *Response* [#18], Declaration of Kristine Craigo (Craigo Declaration), ¶ 31.  Ms. Craigo avers that her husband printed a copy of this customer list for her.   According to Mentor, within a week of her resignation, Ms. Craigo was contacting customers with whom Mentor has a business relationship seeking to obtain business for Sientra.  Ms Craigo says she "did not solicit or induce any Mentor client to terminate their business or contractual relationship with Mentor and merely responded to inquiries to address Mentor's misinformation about my departure."   *Craigo Declaration*, ¶ 29.  however, the time period addressed in paragraph 29 of Ms. Craigo's declaration is not clear.  Specifically,

it is not clear whether Ms. Craigo intends in the future to contact former Mentor clients to seek their business on behalf of Sientra.

According to Mentor's motion [#5], Ms. Craigo failed to return to Mentor a variety of items belonging to Mentor when Ms. Craigo resigned her position with Mentor.  In her declaration, Ms. Craigo says she returned to Mentor a large volume of items, including all Mentor property that was in her possession at the time of her resignation.  *Craigo Declaration*, ¶¶ 3 - 4.  In its notice of errata [#16], Mentor says Ms. Craigo did return some items to Mentor after her resignation.  Included in the items returned, Ms. Craigo says, was the printed copy of her Mentor customer list, as printed by her husband a few days before her resignation.  She says also that her husband deleted the e-mail containing this customer list.

## IV.  ANALYSIS

In its motion, Mentor contends that Ms. Craigo retains information that constitutes trade secrets and confidential information subject to the terms of the confidentiality agreement, including compilations of sales histories between Mentor and customers, market share analysis, product specifications, sales trends, names of surgeons who have done business with Mentor, the specialties of specific surgeons who are Mentor customers, the buying patterns of such surgeons, Mentor's pricing and consignment sale arrangements with specific surgeons, and other information that is not publicly available.   Under these circumstances, Mentor asserts, Ms. Craigo cannot solicit her former Mentor customers, now on behalf of Sientra, without misappropriating the trade secret information she knows about those customers.  *Motion*, pp. 6 - 7.  On this basis, Mentor seeks a temporary restraining order (1) that enjoins Ms. Craigo from using and/or disclosing Mentor's confidential information and trade secrets; (2) that enjoins

4

Ms. Craigo from working for Sientra or, alternatively, from contacting Mentor's customers; and (3) that requires Ms. Craigo to return to Mentor all Mentor property in her possession.

Ms. Craigo contends that a temporary restraining order should not enter. According to Ms. Craigo, she has returned to Mentor all Mentor property that was in her possession, and she is not using or disclosing Mentor's confidential information and trade secrets.  Ms. Craigo has not said, however, that she is not contacting Mentor's customers on behalf of Sientra.  Ms. Craigo contends also that the identifying information, including name, address, and telephone number, for doctors who likely are in need of products like those sold by Mentor and Sientra readily can be obtained from a variety of public sources and, therefore, cannot be seen as a trade secret or confidential information.

A.  Likelihood of Success on the Merits

In its complaint [#1], Mentor asserts claims for (1) breach of the confidentiality agreement between Mentor and Ms. Craigo; (2) actual and/or threatened misappropriation of trade secrets, under Colorado's version of the Uniform Trade Secrets Act; (3) breach of duty of loyalty; and (4) tortious interference with prospective business advantage.  Given the evidence included with the motion [#5], response [#18], and reply [#20], notice of errata [#16], and Ms. Craigo's additional exhibit [#21], I find and conclude that Mentor has established a likelihood of success on its second claim, theft of trade secrets.

Notably, a "customer list can be a trade secret when it is the end result of a long process of culling the relevant information from lengthy and diverse sources, even if the original sources are publicly available." *Hertz v. Luzenac Group*, 576 F.3d 1103, 1113

(10th Cir. 2009) (citations omitted) (applying Colorado Uniform Trade Secret Act).  While

the names, addresses, and phone numbers of relevant Mentor customers may be

available from public sources, additional and highly relevant information about these

customers, such as sales histories, buying patterns, and pricing arrangements, likely is

a trade secret and likely is subject to the terms of the confidentiality agreement.  This is

true because Mentor culled this information from diverse sources and assembled it into

a useable form as it operated its business.  Ms. Craigo does not argue that such

information is publicly available and, therefore, not a trade secret.

It is not disputed that Ms. Craigo had ready access to this type of information

while she was a Mentor employee and that she possessed such information, at least

briefly, after her resignation.  In addition, it is undisputed that Ms. Craigo e-mailed her

customer list to her husband just days before her resignation.  This evidence supports

the conclusion that Mentor has shown a likelihood of success on its trade secrets claim.

### B.  Irreparable Injury

Generally, to establish irreparable injury for the purpose of a temporary

restraining order, the plaintiffs must show that they will suffer irreparable injury, and that

the irreparable injury is of such imminence that there is a clear and present need for

equitable relief to prevent the harm.  *Heideman v. S. Salt Lake City*, 348 F.3d 1182,

1189 (10th Cir. 2003).  In the context of a trade secret, the Colorado Uniform Trade

Secrets Act provides that a temporary injunction "may be granted on such equitable

terms as the court deems reasonable to prevent or restrain actual or threatened

misappropriation of a trade secret."  §7-74-103, C.R.S.  Mentor's showing of actual and

threatened misappropriation of its trade secrets is sufficient to trigger the injunctive relief

authorized by this statute.  "[W]hen the evidence shows that the defendants are

engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown." ***Star Fuel Marts, LLC v. Sam's East, Inc.***, 362 F.3d 639, 651 (10th Cir. 2004).  In essence, if a threatened or actual misappropriation of a trade secret is shown, irreparable harm properly is presumed.

### C.  Balance of Harms

Ms. Craigo will suffer no harm that is recognized in law if she is prohibited from using information to which she has no legal right.  On the other hand, the harm suffered by Mentor from the unlawful use of this information is substantial.  The balance of harms weighs heavily in favor of Mentor.

### D.  Public Interest

I find that there is no indication that the proposed temporary restraining order would be adverse to the public interest.  Prohibiting Ms. Craigo from using and disseminating information to which she has no legal right would, if anything, tend to serve the public interest.

### E.  Bond

FED. R. CIV. P. 65(c) provides that a court may issue "a temporary restraining order only if the movant gives security" in an amount determined by the court.  I read this language as jussive.  It requires the movant to give security, in an amount determined by the court, if a temporary restraining order is issued.  In the circumstances of this case, I find and conclude that security in the amount of one thousand dollars ($1,000.00) is sufficient to serve the purposes established in Rule 65(c).

**THEREFORE, IT IS ORDERED** as follows:

1.  That insofar as Mentor seeks a temporary restraining order in the **Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction** [#5] filed March 28, 2012, the motion is **GRANTED** on the terms stated in this order;

2.  That effective forthwith defendant, Kristine Craigo, together with her agents, attorneys, or anyone acting on her behalf, **TEMPORARILY IS ENJOINED AND RESTRAINED** from

A.  using or disclosing confidential and trade secret information of Mentor Worldwide LLC, including sales histories, market share analyses, sales trends, the surgical specialties of Mentor's customers, the buying patterns of Mentor's customers, birth dates and cell phone numbers of Mentor customers, information in Mentor's "Playbook," the likes and dislikes of Mentor customers, Mentor's pricing arrangements with its customers, and Mentor's pricing history;

B.  copying, disclosing, conveying, transferring, or selling any confidential and trade secret information of Mentor Worldwide LLC;

C.  deleting or destroying, erasing or otherwise making unavailable for further proceedings in this matter any Mentor business information, trade secrets, proprietary information, tangible or intangible property, and any information belonging to or relating to any Mentor customer, which information was obtained by Ms. Craigo during her employment by Mentor.

D.  taking any action to delete, destroy, damage, shred, erase, wipe, or otherwise alter any computer hard drive or other computer storage media

containing Mentor business information or other evidence within the scope of discovery in this matter;

F.  deleting, erasing, altering or otherwise rendering unavailable for further proceedings in this matter, email messages and other content in any email accounts owned or used by Ms. Craigo; and

G.  contacting customers of Mentor Worldwide LLC who have been customers of Mentor within the twelve months preceding Ms. Craigo's resignation from Mentor;

3.  That Kristine Craigo **SHALL  RETURN** to Mentor Worldwide LLC any and all Mentor property and information in her possession, including all electronic and hard copies of such property and information;

4.  That Kristine Craigo **SHALL  NOT  RETAIN** any copies of any property or information of Mentor Worldwide LLC now in her possession or previously in her possession;

5.  That the court **SHALL CONDUCT** a hearing on the plaintiff's motion for preliminary injunction on **Friday, April 20, 2012, commencing at 1:30 p.m. (MDT)**;

6.  That the court reserves the remainder of the afternoon, if necessary, to conduct the hearing, with the available time to be divided equally between the parties;

7.  That this Temporary Restraining Order **SHALL REMAIN IN EFFECT** until 5:00 p.m.(MDT), Friday, April 20, 2012, unless sooner modified or rescinded;

8.  That under FED. R. CIV. P. 65(c), plaintiff, Mentor Worldwide LLC, is **ORDERED** to deposit with the clerk of the court a bond in the amount of one thousand dollars ($1,000) for the payment of such costs and damages as may be suffered by any party later found to have been wrongfully restrained;

9

9.  That the bond shall be deposited with the clerk of the court on or before Tuesday, April 10, 2012, at 5:00 p.m. (MDT);

10.  That otherwise, the portion of **Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction** [#5] filed March 28, 2012, requesting a temporary restraining order is **DENIED**.

Dated at Denver, Colorado, April 6, 2012, at 4:00 p.m. (MDT).

**BY THE COURT:**

Robert E. Blackburn
United States District Judge