**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 12-cv-00776-REB-MJW

MENTOR WORLDWIDE LLC,

    Plaintiff,

v.

KRISTINE CRAIGO,

    Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
AND DISSOLVING TEMPORARY RESTRAINING ORDER**

---

**Blackburn, J.**

This matter is before me on the motion for a preliminary injunction contained within **Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction** [#5][1] filed March 28, 2012. The defendant filed a response [#18], and the plaintiff filed a reply [#20]. Based on the plaintiff's preliminary showing in support of its motion for temporary restraining order, I issued a **Temporary Restraining Order** [#24] on April 6, 2012. On April 20, 2012, I conducted a hearing on the motion for preliminary injunction and heard argument from both the plaintiff and the defendant. I have considered the evidence submitted in support of and opposition to the motion for temporary restraining order and the evidence submitted in support of and opposition to the motion for preliminary injunction, including the testimony presented at the April 20, 2012, hearing. Having considered this evidence and the arguments presented by the

---

[1] "[#5]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

parties in their briefs and at the April 20, 2012, hearing, I deny the motion for preliminary injunction and dissolve the **Temporary Restraining Order** [#24].

## I.  JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1332 (diversity).

## II.  STANDARD OF REVIEW

A preliminary injunction is extraordinary relief.  A party seeking a preliminary injunction must show: (1) that the movant has a substantial likelihood of eventual success on the merits; (2) that the movant will suffer imminent and irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest.  ***Lundgrin v. Claytor***, 619 F.2d 61, 63 (10th Cir. 1980); ***Heideman v. S. Salt Lake City***, 348 F.3d 1182, 1189 (10th Cir. 2003) (irreparable injury must be imminent).  On balance, the evidence in this case, considered in light of the relevant factors, does not support the issuance of a preliminary injunction or a continuation of the temporary restraining order.

## III.  BACKGROUND

The defendant Kristine Craigo was an employee of the plaintiff Mentor Worldwide LLC for about 21 years.  Ms. Craigo was a plastic surgery sales representative working in Mentor's rocky mountain region.  Ms. Craigo's sales efforts focused on Mentor's breast implant products.  On March 9, 2012, the Food and Drug Administration approved Sientra Inc. to sell its silicone gel breast implants.  The approval made Mentor and Sientra direct competitors in the silicone gel breast implant business.  On March 12, 2012, Ms. Craigo resigned her employment with Mentor and immediately went to work

for Sientra.

In the few days before her resignation from Mentor, Ms. Craigo e-mailed three copies of her Mentor customer list to her husband. These customer lists were contained in spreadsheets created in the computer program Microsoft Excel. The two spreadsheets e-mailed on March 7, 2012, were sorted in two different ways. Ms. Craigo e-mailed a third copy of the spreadsheet to her husband on March 8, 2012. Certain Mentor quota information was included in two of the spreadsheets. At Ms. Craigo's request, Mr. Craigo printed one or more copies of one or more of these spreadsheets.

An examination of an image of the hard drive of Mr. Craigo's computer shows that the three e-mails, to which the spreadsheets were attached, were deleted from Mr. Craigo's computer before the hard drive image was created. However, the image of the hard drive on Mr. Craigo's computer shows that the spreadsheets containing Ms. Craigo's Mentor customer lists still existed on the hard drive as of April 9, 2012, when the hard drive image was created. The spreadsheets were located in the folder in which the e-mail program on the computer automatically places an e-mail attachment. Those spreadsheets have been removed from Mr. Craigo's computer. There is no evidence in the record that Mr. or Ms. Craigo made additional copies of these spreadsheets or forwarded the spreadsheets to another computer at any time after March 7, 2012. Ms. Craigo says she has returned to Mentor all printed copies of the spreadsheets.

According to Mentor, within a week of her resignation, Ms. Craigo was contacting customers with whom Mentor has a business relationship, seeking to obtain business for Sientra. In her declaration, Ms. Craigo says she "did not solicit or induce any Mentor client to terminate their business or contractual relationship with Mentor and merely

3

responded to inquiries to address Mentor's misinformation about my departure." *Craigo Declaration*, ¶ 29.  Evidence presented at the April 20, 2012, hearing indicates that Ms. Craigo has contacted Mentor customers on behalf of Sientra since she began working for Sientra.  However, evidence presented at the hearing indicates that Sientra provided Ms. Craigo lists of potential customers and directed Ms. Craigo to contact those customers on behalf of Sientra.

Evidence presented at the April 20, 2012, hearing indicates that both Mentor and Sientra maintain customer information on a website called salesforce.com.  Mentor's information on salesforce.com is accessible only to a person who has a Mentor e-mail address, the proper password, and other credentials. There is no evidence that Ms. Craigo has access to Mentor's information as maintained on salesforce.com.

According to Mentor's motion [#5], Ms. Craigo failed to return to Mentor a variety of items belonging to Mentor when Ms. Craigo resigned her position with Mentor.  In her declaration, Ms. Craigo says she returned to Mentor a large volume of items, including all Mentor property that was in her possession at the time of her resignation.  *Craigo Declaration*, ¶¶ 3 - 4.  Mentor concedes that Ms. Craigo returned some items, but Mentor has not yet conducted a complete inventory of items returned by Ms. Craigo. Included in the items returned to Mentor, Ms. Craigo says, was any printed copy of her Mentor customer list, as printed by her husband a few days before her resignation.

## IV.  ANALYSIS

In its motion, Mentor contends that Ms. Craigo retains information that constitutes trade secrets, including sales histories of Mentor customers, Mentor market share analysis, Mentor product specifications, Mentor sales trends, names of surgeons who

4

have done business with Mentor, the specialties of specific surgeons who are Mentor customers, the buying patterns of such surgeons, Mentor's pricing and consignment sale arrangements with specific Mentor customers, and other information that is not publicly available.   Under these circumstances, Mentor asserts, Ms. Craigo cannot solicit her former Mentor customers, now on behalf of Sientra, without misappropriating the trade secret information she knows about those customers.  *Motion*, pp. 6 - 7.  On this basis, Mentor seeks a preliminary injunction (1) that enjoins Ms. Craigo from using and/or disclosing Mentor's confidential information and trade secrets; (2) that enjoins Ms. Craigo from working for Sientra or, alternatively, from contacting Mentor's customers; and (3) that requires Ms. Craigo to return to Mentor all Mentor property in her possession.

Ms. Craigo contends that a preliminary injunction should not enter.  According to Ms. Craigo, she has returned all Mentor property that was in her possession, and she is not using or disclosing Mentor's confidential information and trade secrets in her work with Sientra.  Ms. Craigo concedes that she is contacting Mentor customers on behalf of Sientra but, again, she says Sientra is providing her with the names and contact information of customers she is to contact.  Ms. Craigo contends also that the identifying information, including name, address, and telephone number, of doctors who likely are in need of products like those sold by Mentor and Sientra can be obtained readily from a variety of public sources and, therefore, cannot be seen as a trade secret or confidential information.  According to Ms. Craigo, she is not using information she learned at Mentor, such as pricing information, sales patterns, and buying trends, in her work with Sientra.

A. Likelihood of Success on the Merits

In its complaint [#1], Mentor asserts claims for (1) breach of the confidentiality agreement between Mentor and Ms. Craigo; (2) actual and/or threatened misappropriation of trade secrets, under Colorado's version of the Uniform Trade Secrets Act; (3) breach of duty of loyalty; and (4) tortious interference with prospective business advantage.  At the April 20, 2012 hearing, counsel for Mentor stated that Mentor is basing its request for a preliminary injunction only on its misappropriation of trade secrets claim. Given the evidence submitted to the court by the parties, including the evidence presented at the April 20, 2012 hearing, I find and conclude that Mentor has not established a likelihood of success on the merits of its second claim for theft of trade secrets.

The parties disagree about whether Colorado's version of the Uniform Trade Secrets Act or California's version of the same uniform act is applicable to this case. For the purposes of this preliminary injunction analysis, the relevant provisions of the two acts are substantively similar.  §§7-74-101 - 7-74-110, C.R.S.; Cal. Civ. Code §§ 3426 - 3426.11.  Under both acts, improper disclosure or use of a trade secret can constitute misappropriation of the trade secret.  §7-74-102(2), C.R.S.;  Cal. Civ. Code §3426,1(b). Mentor contends, at minimum, that Ms. Craigo is using Mentor's trade secret information improperly in her work with Sientra.  In addition, Mentor contends that Ms. Craigo continues to possess physical items that contain Mentor's trade secret information.

Notably, a "customer list can be a trade secret when it is the end result of a long process of culling the relevant information from lengthy and diverse sources, even if the

6

original sources are publicly available." *Hertz v. Luzenac Group*, 576 F.3d 1103, 1113 (10th Cir. 2009) (citations omitted) (applying Colorado Uniform Trade Secret Act). While the names, addresses, and phone numbers of relevant Mentor customers may be available from public sources and thus are not trade secrets, additional and highly relevant information about these customers, such as sales histories, buying patterns, pricing arrangements, customer consignment arrangements, and customer preferences, likely are a trade secrets. There is evidence in the record that Ms. Craigo has knowledge of such information. The key issue is whether Ms. Craigo is using such trade secret information in her work with Sientra. On the current record, I conclude that the evidence that Ms. Craigo has possession of or is using Mentor's trade secret information is not sufficient to demonstrate that Mentor has a substantial likelihood of success on the merits of its trade secrets claim.

First, Ms. Craigo says she returned all physical items owned by Mentor that were in her possession when she resigned her position with Mentor, including any such items that contain trade secret information. There is little, if any, evidence in the record that Ms. Craigo now possesses any physical items owned by Mentor that contain Mentor's trade secret information. Second, there is no evidence in the record that shows that Ms. Craigo now has access to Mentor's trade secret information as maintained on salesforce.com. Third, it is undisputed that Ms. Craigo e-mailed to her husband, shortly before her resignation, Excel spreadsheets containing a list of the customers she served while she was employed by Mentor. The evidence in the record indicates that those spreadsheets have been removed from Mr. Craigo's computer. The record contains no evidence that Mr. or Ms. Craigo have access to additional copies of those

spreadsheets.

Fourth, there is little, if any, evidence in the record indicating that Ms. Craigo is using Mentor's trade secret information, as developed while she was employed by Mentor. Ms. Craigo says Sientra tells her what potential customers to contact and, as a result, Ms. Craigo says she is not using information from her Mentor customer list. The record contains no evidence that, in making those contacts on behalf of Sientra, Ms. Craigo is using Mentor's trade secret information. There is significant evidence in the record indicating that Sientra repeatedly has instructed Ms. Craigo not to use any information she acquired while working for Mentor.

Based on the evidence in the record, I conclude that Mentor has not demonstrated a substantial likelihood of success on its claim for theft of trade secrets. This is so because the evidence in the record does not demonstrate a substantial likelihood that Mentor can prove its contention that Ms. Craigo improperly possesses or improperly is disclosing or using Mentor's trade secret information.

### B.  Irreparable Injury

Generally, to establish irreparable injury for the purpose of a temporary restraining order, the plaintiffs must show that they will suffer irreparable injury, and that the irreparable injury is of such imminence that there is a clear and present need for equitable relief to prevent the harm.  ***Heideman v. S. Salt Lake City***, 348 F.3d 1182, 1189 (10th Cir. 2003).  In the context of a trade secret, the Colorado Uniform Trade Secrets Act provides that a temporary injunction "may be granted on such equitable terms as the court deems reasonable to prevent or restrain actual or threatened misappropriation of a trade secret." §7-74-103, C.R.S.  The California act provides that

"(a)ctual or threatened misappropriation may be enjoined." Cal. Civ. Code § 3426.2(a). "[W]hen the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown." ***Star Fuel Marts, LLC v. Sam's East, Inc.***, 362 F.3d 639, 651 (10th Cir. 2004). In essence, if a threatened or actual misappropriation of a trade secret is shown, irreparable harm properly is presumed.

In this case, the evidence in the record does not demonstrate a substantial likelihood that Mentor can prove a threatened or actual misappropriation of a Mentor trade secret by Ms. Craigo. In that circumstance, irreparable injury may not be presumed. Setting any presumption aside, absent appropriate evidence of a threatened or actual misappropriation of a trade secret by Ms. Craigo, Mentor cannot demonstrate irreparable injury caused by such a threatened or actual misappropriation. Thus, Mentor has not demonstrated irreparable injury.

## V.  CONCLUSION & ORDERS

Absent evidence sufficient to show a substantial likelihood of success on the merits of its theft of trade secrets claim, and absent evidence to show that Mentor will suffer imminent and irreparable injury unless a preliminary injunction issues, Mentor is not entitled to a preliminary injunction. Given the lack of sufficient evidence on the first two relevant factors, there is no need to analyze the third and fourth preliminary injunction factors. Further, after consideration of the more complete evidentiary presentation made in relation to Mentor's motion for preliminary injunction, as compared to the evidence submitted in support of the motion for temporary restraining order, I

**THEREFORE, IT IS ORDERED** as follows:

1. That insofar as Mentor seeks a preliminary injunction in the **Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction** [#5] filed March 28, 2012, the motion is **DENIED**;

2. That effective forthwith, the court's **Temporary Restraining Order** [#24], issued by this court on April 6, 2012, is **DISSOLVED, RESCINDED, AND ANNULLED**.

Dated at Denver, Colorado, April 26, 2012,

**BY THE COURT:**

*/s/ Bob Blackburn*
Robert E. Blackburn
United States District Judge

conclude that the **Temporary Restraining Order** [#24] must be lifted.

**THEREFORE, IT IS ORDERED** as follows:

1. That insofar as Mentor seeks a preliminary injunction in the **Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction** [#5] filed March 28, 2012, the motion is **DENIED**;

2. That effective forthwith, the court's **Temporary Restraining Order** [#24], issued by this court on April 6, 2012, is **DISSOLVED, RESCINDED, AND ANNULLED**.

Dated at Denver, Colorado, April 26, 2012,

**BY THE COURT:**

*[signature: Bob Blackburn]*
Robert E. Blackburn
United States District Judge